**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHARLES E. COLLINS, III,

                Petitioner,
    v.                                    No. 03-CV-590
                                            (LEK/DRH)

NEW YORK STATE DIVISION OF PAROLE,

                Respondent.
_____

**APPEARANCES:**                          **OF COUNSEL:**

CHARLES E. COLLINS, III
Petitioner Pro Se
108 Brunswick Road
Troy, New York 12180

HON. ELIOT SPITZER                    BRIDGET E. HOLOHAN, ESQ.
Attorney General for the               GERALD J. ROCK, ESQ.
   State of New York                    Assistant Attorneys General
Attorney for Respondent
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner Charles E. Collins, III ("Collins") was formerly an inmate in the custody of the New York State Department of Correctional Services (DOCS). Collins was found guilty on February 18, 2000 of criminal mischief in the second degree after a jury trial in Albany County Court. Collins was sentenced to an indeterminate term of one and one-third to four

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

years imprisonment. Collins served this sentence[2] and now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that he was entitled to transactional immunity based on his testimony before the grand jury and the criminal mischief statute was unconstitutional. For the reasons which follow, it is recommended that the petition be denied.

### I. Background

Early in the morning of January 26, 1998, Collins pulled a pickup truck in front of the New York State Court of Appeals building in Albany, New York with a fifty-five gallon drum filled with a mixture of chicken excrement manure and water. T. 1255-61, 1315-29.[3] Collins used a power sprayer to spray the mixture on the front of the building and drove away. T. 1255-61, 1332-33. Collins had the incident videotaped. T. 1334-36. Collins stated that the incident was to highlight the corruption of the state judiciary. T. 1337.

Collins was arrested, indicted, tried, convicted, and sentenced as indicated above. The Appellate Division affirmed the conviction. People v. Collins, 288 A.D.2d 756 (3d Dep't 2001). Application for leave to appeal to the New York Court of Appeals was denied on March 26, 2002. People v. Collins, 97 N.Y.2d 752 (2002). This action followed.

---

[2] Collins was convicted of a class D felony, which includes a period of probation of five years. N.Y. Penal Law § 65.00 (3)(a)(I). Collins was released on parole on January 29, 2001 which expires January 28, 2006. N.Y. Penal Law § 65.15 (1). Therefore, Collins is "in custody" for the purpose of the habeas statute. See Dixon v. Miller, 293 F.3d 74, 78 (2d Cir.2002).

[3] "T" followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 12.

## II. Discussion

### A. Waiver of Right to Counsel

#### 1. State Law Claims

Respondent first contends that Collins' claim that he was entitled to transactional immunity for his grand jury testimony is purely a question of state law and therefore not cognizable in this proceeding.

Habeas relief is only available to correct errors of constitutional dimensions or violations of federal law. 28 U.S.C. § 2254(a) (1994). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This Court is limited to determining if Collins' conviction violated the Constitution, laws or treaties of the United States. Id. at 68.

The trial court determined that Collins had properly waived any claim for immunity. Miscellaneous Tr. at 107. Collins' claim that he was entitled to transactional immunity pursuant to N.Y. Crim. Proc. Law § 190.50 is purely a question of state law and not cognizable before this court. To the extent that Collins is asserting a violation of state law, the petition should be denied on this ground.

In the alternative, respondent contends that Collins waived any claim to immunity. N.Y. Crim. Proc. Law § 190.50 (4) states that "the district attorney may demand that any witness thus called at the instance of the grand jury sign a waiver of immunity pursuant to section 190.45 before being sworn, and upon such demand no oath may be administered to such witness unless and until he complies therewith." Here, Collins' executed a written waiver of immunity and swore to it before the grand jury. Miscellaneous Tr. at 108; Pet'r

Mem. of Law (Docket No. 16) at 4-6. The waiver of immunity was clearly explained to Collins, who indicated that he understood what rights he was waiving. Id. Collins knowingly waived his right to immunity and was not therefore entitled to transactional immunity. There is no requirement that a judicial inquiry take place in order to waive immunity. The waiver was not defective and Collins' constitutional rights were not violated.

In addition, both the trial court and the Appellate Division rejected this claim on the merits in finding that Collins had properly waived immunity and these decisions were not contrary to, and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and were not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

Therefore, the petition on this ground should be denied.

## 2. Grand Jury Proceedings

Collins contends that because he did not waive his right to counsel when he testified before the grand jury, he was entitled to transactional immunity. Respondent contends that any defects in grand jury proceedings are not cognizable in this proceeding.

Once a defendant has been convicted by a jury, any errors alleged in the grand jury proceedings are rendered harmless beyond a reasonable doubt. Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  Moreover, the Fifth Amendment right to indictment is not incorporated by the Due Process Clause of the Fourteenth Amendment and thus does not apply to the states. Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990).  Deficiencies in

grand jury proceedings are not cognizable in habeas corpus proceedings. Lopez, 865 F.2d at 32; McMoore v. Miller, No. 98-CV-1915, 2002 WL 975305, at *8 (N.D.N.Y. Apr. 19, 2002) (Sharpe, J.). Therefore, any claims arising out of Collins' allegations regarding the grand jury proceedings are not cognizable in this proceeding because there is no constitutional right implicated.

To the extent that Collins is challenging the grand jury proceedings, this claim is not cognizable in this proceeding due to Collins subsequent conviction after a jury trial. Therefore, the petition on this ground should be denied.

### 3. Waiver

Collins contends that he did not legally waive his right to counsel at arraignment and when he appeared before the grand jury. Respondent contends that to the extent that Collins is asserting a violation of his Sixth Amendment right to the effective assistance of counsel, this claim lacks merit.

The Sixth Amendment provides that all criminal defendants have the right to the assistance of counsel for their defense. U.S. Const. amend. VI; Gideon v. Wainwright, 372 U.S. 335, 344 (1963). A defendant may proceed without the assistance of counsel if he or she has "clearly and unequivocally" made a competent, knowing, and intelligent waiver. Godinez v. Moran, 509 U.S. 389, 396 (1993); Faretta v. California, 422 U.S. 806, 835 (1975); Williams v. Bartlett, 44 F.3d 95, 99-100 (2d Cir. 1994). A court must ensure that the decision to proceed with self-representation showed a "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel" and to warn the defendant of the

5

dangers and disadvantages of self-representation. Faretta, 422 U.S. at 835; Dallio v. Spitzer, 343 F.3d 553, 561 (2d Cir. 2003).

The validity of the waiver depends on examination of all the surrounding circumstances, including the experiences, background, and conduct of the defendant, the defendant's understanding of the choice either to proceed with counsel or pro se; the defendant's understanding of the advantages of being represented by one trained in the law; the defendant's capacity to make an intelligent choice; and the colloquy between a court and a defendant concerning that choice. United States v. Hurtado, 47 F.3d 577, 583 (2d Cir. 1995). An intelligent waiver does not require a court to ascertain if the accused has the skill or knowledge of a lawyer. Faretta, 422 U.S. at 835; United States v. Tracy, 12 F.3d 1186, 1191 (2d Cir. 1993).

Here, at arraignment on January 26, 1998, Collins was provided with a copy of the charges, the nature of the charge and its elements were explained, he was notified that he was charged with a class D felony, and he was given the facts that allegedly supported the charge. Miscellaneous Tr. at 8. The court notified Collins that he had a right to an attorney and that if he could not afford an attorney, one could be appointed. Collins stated that he could not afford an attorney but rejected representation by the Public Defender's office due to prior dealings with them. Collins stated that he wished to represent himself. Id. at 9. The fact that Collins pleaded not guilty, effectively argued for a reduction in bail, and indicated that he wished to testify before the grand jury demonstrated that he had a basic knowledge about the legal system. Id. at 10, 15. In addition, Collins was a paralegal. Pet'r Mem. of Law at 4.

6

Collins subsequently accepted appointed counsel, who made a motion to dismiss the indictment on the ground that he was denied the right to counsel at arraignment and at grand jury proceedings. Miscellaneous Tr. at 20. Collins argued that his waiver of counsel was not knowing and voluntary in the absence of a colloquy to the court. Id. at 23. The court held an extensive hearing on this motion. Id. at 20-21. The city court judge that presided over Collins' arraignment testified that he believed that Collins clearly wished to represent himself based upon his experience with Collins in a prior case in which Collins appeared pro se. During this previous case between 1995 and 1997, Collins made several motions pro-se and the judge believed that Collins had experience with the law. Id. at 26-55. After the hearing, the court found that Collins had knowingly and voluntarily waived his right to counsel at the arraignment and at the grand jury proceedings. Id. at 107.

Collins claims that the court did not conduct a sufficient inquiry when he waived representation. However, there was an inquiry and hearing into this matter, and the court concluded that Collins had effectively waived his right to counsel at both the arraignment and the grand jury proceedings. This finding is supported by the record. This decision did not result in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

As to Collins' assertion that he was deprived of the right to counsel at the grand jury proceedings, that claim is not cognizable here because, any defect in grand jury proceedings was rendered harmless by the subsequent conviction by jury. Lopez, 865 F.2d at 32

7

Alternatively, the petition on this ground should be denied for these reasons.

### B. Criminal Mischief Statute

Collins contends in the second ground of his petition that the statute which he was convicted of violating is unconstitutionally vague. Respondent contends that this statute was constitutional.

To comply with due process, a criminal statute must give fair warning of the conduct that it makes a crime. Bouie v. Columbia, 378 U.S. 347, 350-52 (1964); United States v. Roberts, 363 F.3d 118, 122-23 (2d Cir. 2004). Vague statutory language may violate due process when it fails to give a reasonable person "fair warning" that certain conduct is in violation of the law. Bouie, 378 U.S. at 352. Kolender v. Lawson, 461 U.S. 352 (1983). A penal statute must "define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender, 461 U.S. at 357. No one "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954).

New York Penal Law § 145.10 states that "[a] person is guilty of criminal mischief in the second degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he has such right, he damages property of another person in an amount exceeding one thousand five hundred dollars." N.Y. Penal Law § 145.10 (McKinney 2004). This is a class D felony. Id.

Collins argues that the meaning of "damage" was not defined and did not include cleanup costs. While there is no statutory definition for damage, the commonly held

8

definition is "injury or harm to property that lowers its value or involves loss of effeiciency" or "injury or harm to property which reduces its value or usefulness, etc." Collins, 288 A.D.2d at 291; People v. Collins, 183 Misc. 2d 303, 304-05 (N.Y. Sup. Ct. 2000) (quoting dictionary).

Here, the damages presented at trial included the costs to replace the destroyed banner and the cost of labor and equipment necessary to clean the building. The inclusion of cleanup costs as damages was a reasonable interpretation of the term damages and a reasonable person would conclude that damages encompassed costs to restore the building to its original state. Cf. Avondale Indus. v. Travelers Indem. Co., 887 F.2d 1200, 1207 (2d Cir. 1989) (holding that under New York law, damages includes cleanup costs in environmental cases). In addition, a reasonable person would know that spraying fifty-five gallons of chicken excrement would substantially lower the value and the efficiency of the building. There is nothing unconstitutionally vague about the language of the statute.

In addition, both the Albany County Supreme Court and the Appellate Division found this meaning of damages to be acceptable and the Appellate Division specifically found that the statute was not un constitutional. These decisions did not result in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Therefore, the petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

9

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS. 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: April 28, 2005
       Albany, New York

*David R. Homer*
United States Magistrate Judge